UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RONALD SCOTT,                        :        CIVIL NO. **1:07-CV-1841**
                                     :
          Plaintiff                  :        (Judge Conner)
                                     :
     v.                              :        (Magistrate Judge Smyser)
                                     :
JEFF WICKARD, JANELLE CARBAUGH,      :
SHARON MCGINTY, VIRGINIA KOSER,      :
GARY I. SHUEY and                    :
CUMBERLAND COUNTY CHILDREN           :
AND YOUTH SERVICES,                  :
                                     :
          Defendants                 :

**REPORT AND RECOMMENDATION**

I.  Background and Procedural History.


     The plaintiff, Ronald Scott commenced this action by

filing a complaint on October 10, 2007.  The plaintiff is

proceeding *pro se.*


     The defendants are Cumberland County Children & Youth

Services (CYS); Gary Shuey, an administrator for CYS; and Jeff

Wickard, Janelle Carbaugh, Sharon McGinty and Virginia Koser, case workers at CYS.

The plaintiff claims that the defendants deprived him of his liberty interest in the care and custody of his daughter, Destiny Scott, without due process of law.  The plaintiff claims that all of the defendants violated his substantive due process rights.  The plaintiff claims that defendants Koser, Shuey and CYS also violated his procedural due process rights, his Sixth Amendment right to counsel and 23 Pa.C.S.A. 6315.[1]  The plaintiff seeks compensatory and punitive damages.

On January 3, 2008, the defendants filed an answer to the complaint.

---

[1] 23 Pa.C.S.A. § 6315 relates to taking a child into protective custody.  23 Pa.C.S.A.  § 6315(c)(1) provides that, with an exception not applicable in this case, "an individual taking a child into protective custody under this chapter shall immediately, and within 24 hours in writing, notify the parent, guardian or other custodian of the child of the whereabouts of the child, unless prohibited by court order, and the reasons for the need to take the child into protective custody and shall immediately notify the appropriate county agency in order that proceedings under 42 Pa.C.S. Ch. 63 (relating to juvenile matters) may be initiated, if appropriate.

Pursuant to the Case Management Order of January 2, 2008, the discovery period closed on June 27, 2008.

On August 26, 2008, the defendants filed a motion for summary judgment, a statement of undisputed facts, documents and a brief in support of their motion for summary judgment.  On September 30, 2008, the plaintiff filed a brief in opposition to the defendants' motion for summary judgment and documents in opposition to the motion.  On November 12, 2008, the defendants filed a reply brief.[2]

II.  Summary Judgment Standard.

Summary judgment is appropriate if the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."

---

[2] On November 24, 2008, without leave of court, the plaintiff filed a sur-reply brief. The plaintiff titled this document as "Plaintiff's Statement of Disputed Facts to Defendants' Reply Brief." By a separate order, we have stricken the plaintiff's sur-reply brief since it was filed without leave of court.

3

Fed.R.Civ.P. 56(c).  The moving party bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  With respect to an issue on which the nonmoving party bears the burden of proof, the moving party may discharge that burden by "'showing'-- that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.  Once the moving party has met its burden, the nonmoving party may not rest upon the mere allegations or denials of its pleading; rather, the nonmoving party must "set out specific facts showing a genuine issue for trial."  Fed.R.Civ.P. 56(e)(2).

A material factual dispute is a dispute as to a factual issue that will affect the outcome of the trial under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*

4

Summary judgment is not appropriate when there is a genuine dispute about a material fact. *Id.* at 248. An issue of fact is "'genuine' only if a reasonable jury, considering the evidence presented, could find for the non-moving party." *Childers v. Joseph*, 842 F.2d 689, 693-94 (3d Cir. 1988). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). "If the evidence is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Anderson, supra,* 477 U.S. at 249-50. In determining whether a genuine issue of material fact exists, the court must consider all evidence in the light most favorable to the non-moving party. *White v. Westinghouse Electric Co.*, 862 F.2d 56, 59 (3d Cir. 1988).

At the summary judgment stage, the judge's function is not to weigh the evidence and determine the truth of the matter, but is to determine whether there is a genuine issue for trial. *Anderson, supra,* 477 U.S. at 249. The proper inquiry of the

court in connection with a motion for summary judgement "is the threshold inquiry of determining whether there is the need for a trial - whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

"[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex, supra*, 477 U.S. at 322.  "Under such circumstances, 'there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.'" *Anderson v. CONRAIL*, 297 F.3d 242, 247 (3d Cir. 2002)(quoting *Celotex, supra*, 477 U.S. at 323).

6

III. Undisputed Facts.


Local Rule 56.1, Rules of Court, M.D. Pa., provides:

A motion for summary judgment filed pursuant
to Fed.R.Civ.P. 56, shall be accompanied by a
separate, short and concise statement of the
material facts, in numbered paragraphs, as to
which the moving party contends there is no
genuine issue to be tried.
The papers opposing a motion for summary
judgment shall include a separate, short and
concise statement of the material facts,
responding to the numbered paragraphs set forth
in the statement required in the foregoing
paragraph, as to which it is contended that there
exists a genuine issue to be tried.
Statements of material facts in support of,
or in opposition to, a motion shall include
references to the parts of the record that
support the statements.
All material facts set forth in the
statement required to be served by the moving
party will be deemed to be admitted unless
controverted by the statement required to be
served by the opposing party.


The defendants filed a Local Rule 56.1 statement of

material facts.  The plaintiff, however, in contravention of

Local Rule 56.1 did not file a response to the defendants'

statement of material facts.[3]  Accordingly, pursuant to Local Rule
56.1, the material facts set forth in the defendants' statement
of material facts are deemed to be undisputed for purposes of the
defendants' motion for summary judgment.

The following facts are not in dispute for purposes of
the defendants' motion for summary judgment.

On September 14, 2005, CYS received a confidential
referral alleging that Carol Scott, the mother of Destiny Scott,
took approximately seventy-five pills over the last 5 days. *Doc.
14 (Defendants, Cumberland County Children & Youth Services, Et
al.'s Statement of Undisputed Facts) at ¶1.*  CYS was told that
Carol Scott's speech was slurred, that she was staggering, and
that she had fallen down the steps two times and broken her nose.

---

[3] Although the plaintiff did not file a response to the
defendants' statement of material facts, a portion of the
plaintiff's brief in opposition to the defendants' motion for
summary judgment is entitled "Statement of Disputed Facts."
This is not a response to the defendants' statement of material
facts.  Thus, it does not serve to controvert the material
facts set forth by the defendants.

*Id.*  The referral source stated that Carol Scott has AIDS and is bipolar. *Id.*

Upon receiving the confidential referral, defendant Koser visited Carol Scott's home with the State Police on September 14, 2005. *Id.* at ¶2.  Carol Scott reported to them that she had not slept for five days. *Id.*  She denied that she had abused any medications. *Id.*  She admitted that she had broken her nose from a fall down the stairs. *Id.*  She attributed the fall to her insomnia. *Id.*  Carol Scott agreed to a safety plan to assist in her care for Destiny at least until the insomnia issues had been addressed. *Id.*  During defendant Koser's visit on September 14, 2005, Carol Scott informed defendant Koser that Destiny has had no contact with the plaintiff since she was 6 years of age. *Id.* at ¶3.  In 2005, Destiny was 9 years old. *Id.* Carol Scott also reported that she received $50.00 per month in child support from the plaintiff but that she had no knowledge of his whereabouts or place of residence. *Id.*

On September 19, 2005, defendant Koser made a second visit to Carol Scott's home. *Id.* at ¶4.  Carol Scott again informed defendant Koser that she had no knowledge of the plaintiff's whereabouts and that the plaintiff had not been in contact with Destiny since she was 6 years old. *Id.*  Carol Scott also reported that the plaintiff knew where she and Destiny lived and that he could visit anytime. *Id.*  Defendant Koser informed Carol Scott that CYS would need to try to locate the plaintiff to inform him of the confidential referral from September 14, 2005. *Id.*

In September of 2005, the policy of CYS was, upon the receipt of a confidential referral, to implement services to immediately make the home situation stable. *Id.* at ¶5.  If and after it had become clear that the child's current living situation was no longer stable, efforts were made to find parents who were no longer living with the child. *Id.*

On September 27, 2005, defendant Koser sensed that the CYS services might not be sufficient to stabilize Carol Scott's

10

situation with Destiny. *Id.* at ¶6.  She had concerns that Carol
Scott's lack of cooperation could increase the risk that Destiny
would need to be placed elsewhere. *Id.*  Defendant Koser, using
the plaintiff's name and his date of birth, then began to search
for information on the plaintiff's whereabouts. *Id.* at ¶7.
Defendant Koser searched the telephone book and found one listing
for a Ronald Scott. *Id.*  Upon calling the number listed, she
cross-referenced the two birth dates and discovered that the man
in the telephone book listing was not the plaintiff. *Id.*
Defendant Koser then searched for other Ronald Scotts in the area
on Yahoo.com. *Id.*  One telephone number was found for a Ronald
Scott in Harrisburg, Pennsylvania. *Id.*  However, when defendant
Koser contacted the number, a woman answered and stated that no
Ronald Scott lived with her. *Id.*

On September 28, 2005, defendant Koser made an
unannounced visit to Carol Scott's home. *Id.* at ¶8.  Destiny was
at home by herself, but she was alright. *Id.*  When Carol Scott
returned, she appeared clear-headed. *Id.*  Carol Scott refused to
sign any new releases at that time. *Id.*  The releases would have

11

permitted defendant Koser to contact Carol Scott's drug and
alcohol treatment provider, Carol Scott's doctor, and Destiny's
school and primary physician. *Id.*

On October 11, 2005, CYS received a confidential referral
from Carol Scott's physician, Dr. Bradford Wood. *Id.* at ¶9.  Dr.
Wood indicated to defendant Koser that he strongly suspected that
Carol Scott was abusing prescription medications and that he had
refused to call in a prescription refill requested by Carol
Scott. *Id.*  He reported that Carol Scott then came to the
doctor's office and caused a scene, cursing and demanding that
her prescription be refilled. *Id.*  Dr. Wood repeatedly refused to
authorize a refill. *Id.*  Carol Scott eventually left the office
without a prescription. *Id.*  Dr. Wood reported that Ms. Scott is
"not functional" and questioned her ability to care for herself
let alone a child.  *Id.*

On October 11, 2005, defendant Koser made an unannounced
visit to Carol Scott's home. *Id.* at ¶10.  She observed that Carol
Scott's speech was slurred, that her thought process was slow,

that her movements were hindered, and that she had difficulty with comprehension. *Id.* Carol Scott was uncooperative during the visit. *Id.* She refused to establish a safety plan for Destiny, and she refused to sign any releases for CYS. *Id.*

CYS held a staff meeting to discuss the Carol Scott case. *Id.* Defendant Koser returned to Carol Scott's home later in the afternoon on October 11, 2005. *Id.* Carol Scott was again uncooperative. *Id.* She kicked defendant Koser out of her home when defendant Koser informed her that Destiny would be placed in CYS's care if she did not cooperate. *Id.* Defendant Koser went to the parking lot and contacted her supervisor in order to obtain an emergency court order for Destiny's custody. *Id.* On October 11, 2005, an emergency verbal court Order was entered by Judge Guido of the Court of Common Pleas of Cumberland County placing Destiny into CYS's care and custody for placement in a foster home. *Id.* at ¶11. Carol Scott's behavior was extremely out of control while Destiny was removed from her custody. *Id.* Police assistance was required. *Id.*

On October 12, 2005, Judge Guido ratified the October 11, 2005 verbal order of Court directing that Destiny be placed in the temporary custody of CYS for placement in an emergency foster home. *Id.* at ¶12.[4]

On October 13, 2005, an emergency Court hearing (referred to as a "72 hour hearing" or "dependency and placement hearing")[5]

---

[4] The Order of October 12, 2005 indicates that it was based on information received by CYS that Destiny is alleged to be dependent. *Doc. 14-2.* Under Pennsylvania law, a dependent child is a child who *inter alia* "is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals." 42 Pa.C.S.A. § 6302.

[5] 42 Pa.C.S.A. § 6332 provides:

> **(a) General rule.** - An informal hearing shall be held promptly by the court or master and not later than 72 hours after the child is placed in detention or shelter care to determine whether his detention or shelter care is required under section 6325 (relating to detention of child), whether to allow the child to remain in the home would be contrary to the welfare of the child and, if the child is alleged to be deliquent, whether probable cause exists that the child has committed a delinquent act.  Reasonable notice thereof, either oral or written, stating the time, place, and purpose of the hearing shall be given to the child and if they can be found, to his parents, guardian, or other custodian. Prior to the commencement of the hearing the court or master shall inform the

(continued...)

14

was held before the Juvenile Court Master. *Id.* at ¶13.  CYS had

no knowledge of the plaintiff's whereabouts despite their efforts

to find him, and, therefore, CYS could not inform the plaintiff

of the hearing. *Id.*

---

[5](...continued)
>        parties of their right to counsel and to
>        appointed counsel if they are needy
>        persons, and of the right of the child to
>        remain silent with respect to any
>        allegations of delinquency. If the child is
>        alleged to be a dependent child, the court
>        or master shall also determine whether
>        reasonable efforts were made to prevent
>        such placement or, in the case of an
>        emergency placement where services were not
>        offered and could not have prevented the
>        necessity of placement, whether this level
>        of effort was reasonable due to the
>        emergency nature of the situation, safety
>        considerations and circumstances of the
>        family.
>        **(b) Rehearing.** - If the child is not so
>        released and a parent, guardian or other
>        custodian has not been notified of the
>        hearing, did not appear or waive appearance
>        at the hearing, and files his affidavit
>        showing these facts, the court or master
>        shall rehear the matter without unnecessary
>        delay and order release of the child,
>        unless it appears from the hearing that his
>        detention or shelter care is required under
>        section 6325.

At the October 13, 2005 hearing, Master Flower recommended that Destiny be placed in the care and custody of CYS. *Id.* at ¶14.  Master Flower also stated that Frank and Barbara Golad, Destiny's Aunt and Uncle who had cared for her in the past, may be a long-term resource for her. *Id.*  Master Flower recommended that CYS order an Interstate Compact Home Study of the Golads' home. *Id.*  The parties waived the 10-day hearing requirement. *Id.*[6]

After the October 13, 2005 emergency hearing, CYS took additional measures to locate the plaintiff. *Id.* at ¶15. Intake Screener Elizabeth Browning was instructed to perform a diligent search to assist defendant Koser in locating the plaintiff. *Id.* It is CYS's practice to use any available identifying information to locate individuals. *Id.* at ¶15a.  Elizabeth Browning searched for the plaintiff primarily via the internet using his name, date of birth, and the names of Carol and Destiny Scott. *Id.* at ¶15b.

---

[6] 42 Pa.C.S.A. § 6335 (a) provides, in part, that "[a]fter the petition has been filed alleging the child to be dependent or deliquent, the court shall fix a time for hearing thereon, which, if the child is in detention or shelter care shall not be later than ten days after the filing of the petition."

16

She searched "zabasearch.com" and "Search USA," which is an
information Website that lists an individual's city and state
history. *Id.* Elizabeth Browning found two addresses for Ronald
Scott. *Id.* at ¶15c. The first was an old address for a Ronald
Scott at an unknown Perry County campground. *Id.* The second
address was for a Ronald Scott at 9 Newport Road, Duncannon, PA
17020. *Id.* Defendant Koser mailed a letter to the plaintiff at
that address in Duncannon on October 17, 2005, asking him to
contact CYS. *Id.* at ¶15d. On October 21, 2005, defendant Koser
received the "returned letter;" the reason for nondelivery was
marked "other" due to "no box." *Id.*

It was the practice of CYS, after an emergency court
hearing for child dependency and placement, to send documentation
of placement in an "application for child support" to the
Cumberland County Domestic Relations Office (DRO). *Id.* at ¶16.
The purpose of this application is to insure that DRO is informed
of each emergency placement case. *Id.* The DRO then will know to
correctly route any child support contributions that might exist.
*Id.* Although CYS submits the "application for child support" to

17

DRO, DRO does not share information with CYS. *Id.* at ¶17.  CYS
and DRO are separate entities. *Id.* at ¶18.  CYS is an agency
within the Human Services Department of the Cumberland County
Administrative Offices. *Id.* at ¶18.  The DRO is under the
direction of the Cumberland County Court of Common Pleas. *Id.*
Once DRO has received the "application for child support" it will
directly contact the parent, and set-up an administrative hearing
to determine a parent's support contribution to foster care. *Id.*
at ¶19.  DRO has no further contact with CYS about the parent and
did not have further contact with CYS in this matter. *Id.*

On October 21, 2005, Judge Guido adopted the
recommendations of Master Flower made on October 13, 2005,
finding that Destiny Scott is a dependent child. *Id.* at ¶20.
Destiny was placed in the care of CYS. *Id.*

On November 9, 2005, CYS received a call from the
plaintiff inquiring about Destiny's placement.[7] *Id.* at ¶21.  CYS
transferred the plaintiff to defendant Carbaugh, Destiny's

_____

[7] The plaintiff learned of the placement through the DRO.

18

caseworker. *Id.* Defendant Carbaugh informed the plaintiff of the emergency situation with Destiny and Carol Scott. *Id.* Defendant Carbaugh made arrangements for a home visit with the plaintiff. *Id.* Additionally, she contacted the court to appoint counsel for the plaintiff, she made arrangements for the plaintiff to visit with Destiny, and she collected information from the plaintiff and his wife, Sheila Scott, to perform a "CLEAN check" for criminal history and a background check for child abuse. *Id.* at ¶22. The "CLEAN check" revealed the plaintiff's criminal history: the plaintiff was convicted of robbery in 1999 and aggravated assault in the 1980s. *Id.*

On November 14, 2005, defendant Carbaugh conducted a home visit of the home of the plaintiff and Sheila Scott. *Id.* at ¶23. The plaintiff requested a paternity test to determine if he was Destiny's father. *Id.* Defendant Carbaugh contacted DRO to inquire about a paternity test for the plaintiff. *Id.* at ¶23a.

On November 15, 2005, defendant Carbaugh gave the plaintiff the home telephone number and address for Destiny's

19

foster mother, and she encouraged him to arrange a visit. *Id.* at
¶24.  On November 21, 2005, the foster mother called defendant
Carbaugh and informed her that she and Destiny had met the
plaintiff at a McDonalds restaurant and that the plaintiff had
cursed loudly about Destiny's placement in foster care. *Id.* at
¶25.

On December 7, 2005, the plaintiff's attorney filed a
petition to place Destiny with the plaintiff. *Id.* at ¶26.  On
December 8, 2005, a hearing on that petition was held before the
Juvenile Court Master. *Id.* at ¶27.  The plaintiff was present
with his attorney. *Id.*  Master Flower denied the plaintiff's
request for custody and recommended that Destiny remain a
dependent juvenile in the care of CYS for continued placement in
the foster home. *Id.*  Master Flower also recommended that family
counseling sessions be scheduled so that the plaintiff and
Destiny could reestablish a relationship. *Id.*  Additionally,
Master Flower requested that CYS work with the plaintiff to
obtain a paternity test. *Id.*  On December 13, 2005, Judge Guido
adopted the recommendations made by Master Flower and held that

Destiny should remain in CYS's care and custody with supervised

visits between the plaintiff and Destiny. *Id.* at ¶28.

The paternity test was completed on March 4, 2006, and

the lab reported to defendant Carbaugh that the probability of

paternity for the plaintiff is 99.99%. *Id.* at ¶29.

In April of 2006, the plaintiff challenged CYS's custody

of Destiny. *Id.* at ¶30.  After a May 31, 2006 hearing, Judge

Guido determined that Destiny remained dependent. *Id.* at ¶31.  He

ordered that Destiny remain in the custody of CYS for placement

in an agency foster home. *Id.*  He ordered that the plaintiff's

visitation with Destiny would be supervised through CYS. *Id.*

Additionally, Judge Guido ordered that, effective June 16, 2006,

Destiny shall be placed in the temporary care and custody of

Barbara and Frank Golad. *Id.*  The plaintiff was directed to

arrange family therapy sessions to re-establish his relationship

with Destiny. *Id.*  The order issued by Judge Guido on May 31,

2006 specifically provided that "Father is directed to arrange

for family therapy sessions between he and his daughter to reestablish the relationship." *Id.* at ¶34.

On June 30, 2006, the plaintiff appealed Judge Guido's May 31, 2006 Order to the Superior Court of Pennsylvania. *Id.* at ¶36.  On September 5, 2006, Judge Guido authored his opinion recounting the history of the case and explaining his findings and the reasons for his decision that the plaintiff should not be granted custody of Destiny. *Id.* at ¶37.  On February 24, 2007, the Superior Court of Pennsylvania dismissed the plaintiff's appeal because counsel failed to file a brief. *Id.* at ¶39.

In the meantime, on November 13, 2006, the plaintiff filed a petition for a Permanency Review and Custody Hearing. *Id.* at ¶38.  On March 5, 2007, Judge Ebert ordered that Destiny continued to be a dependent child and permitted the plaintiff to have unsupervised visits with Destiny. *Id.* at ¶40.  On August 27, 2007, Judge Ebert ordered and directed that Frank and Barbara Golad were to have permanent legal custody of Destiny, and that the plaintiff would have primary physical custody of Destiny

22

during the summer school recess, subject to partial custody with

Carol Scott and the Golads. *Id.* at ¶41.


On September 20, 2007, the plaintiff appealed the August

27, 2007 Order of Court. *Id.* at ¶42.  On May 7, 2008, the

Superior Court upheld Judge Ebert's Order of August 27, 2007. *Id.*

at ¶43.  On July 16, 2008, the Superior Court denied the

plaintiff's application requesting reargument or reconsideration.

*Id.* at ¶44.


IV. Discussion.


A. Constitutional Claims.


The plaintiff claims that the defendants violated his

Fourteenth Amendment and Sixth Amendment rights.  The plaintiff

brings his constitutional claims pursuant to 42 U.S.C. § 1983.

"Section 1983 imposes civil liability upon any person who, acting

under the color of state law, deprives another individual of any

rights, privileges, or immunities secured by the Constitution or

laws of the United States." *Shuman v. Penn Manor School Dist.,* 422 F.3d 141, 146 (3d Cir. 2005).  Section 1983 "does not create any new substantive rights but instead provides a remedy for the violation of a federal constitutional or statutory right." *Id.* To establish a claim under § 1983, a plaintiff must establish both a deprivation of a federally protected right and that this deprivation was committed by one acting under color of state law. *Woloszyn v. County of Lawrence*, 396 F.3d 314, 319 (3d Cir. 2005).

        1. Personal Involvement.

        Defendants Wickard, McGinty and Shuey contend that the claims against them should be dismissed because the plaintiff is seeking to impose liability on them based on a theory of respondeat superior.

        "It is, of course, well established that a defendant in a civil rights case cannot be held responsible for a constitutional violation which he or she neither participated in nor approved." *C.H. Ex. Rel. Z.H. Oliva*, 226 F.3d 198, 201 (3rd Cir. 2000).

"There is no vicarious, respondeat superior liability under § 1983." *Id.* at 202.  Liability under 42 U.S.C. § 1983 may only be based upon a defendant's personal involvement in conduct amounting to a constitutional violation. *Hampton v. Holmesburg Prison Officials*, 546 F.2d 1077, 1082 (3d Cir. 1976).  A 42 U.S.C. § 1983 action against state supervisory officials requires evidence that the defendants actually participated in or had actual knowledge of and acquiesced in the events forming the basis of the claims. *Egan v. Concini*, 585 F. Supp. 801, 804 (M.D. Pa. 1984).

The plaintiff asserts that he is not seeking to hold defendants Wickard, McGinty and Shuey liable on the basis of respondeat superior.  Rather, he asserts that defendants Wickard, McGinty and Shuey were personally involved in violating his rights.

The plaintiff contends that he is suing defendant Shuey for making a policy that does not require CYS caseworkers to investigate claims of one parent against the other.  The

plaintiff, however, has not presented any evidence of such a policy.  Accordingly, defendant Shuey is entitled to summary judgment.

The plaintiff contends that he is suing defendant McGinty for interfering with his visitation and counseling.  The plaintiff has submitted some documents which, he contends, establish that defendant McGinty interfered with his visitation and counseling.  The plaintiff is not seeking to hold defendant McGinty liable on his visitation and counseling claim on the basis of respondeat superior.

The plaintiff also contends that he is suing defendant McGinty for providing false information to the court and for having Judge Guido change the wording of a court order.  Those claims are not in the complaint.  In any event, defendant McGinty is entitled to absolute immunity from those claims. *See Ernst v. Child & Youth Services of Chester County,* 108 F.3d 486, 493 (3d Cir. 1997)(holding that state-employed social workers are

entitled to absolute immunity for their actions in petitioning and in formulating and making recommendations to the court).

The plaintiff contends that he is suing defendant Wickard for interfering with his visitation and counseling.  The plaintiff has submitted some documents which, he contends, establish that defendant Wickard interfered with his visitation and counseling.  The plaintiff is not seeking to hold defendant Wickard liable on his visitation and counseling claim on the basis of respondeat superior.

The plaintiff also contends that he is suing defendant Wickard for violating a court order and for misrepresenting facts to the court.  Those claims are not in the complaint.  In any event, the plaintiff has not presented evidence that defendant Wickard violated a court order, and defendant Wickard is entitled to absolute immunity from any claim that he misrepresented facts to the court.  *See Ernst, supra,* 108 F.3d at 493.

2. Qualified Immunity.

The defendants contend that they are entitled to qualified immunity from the plaintiff's constitutional claims.

Despite their participation in constitutionally impermissible conduct, government officials "may nevertheless be shielded from liability for civil damages if their actions did not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Hope v. Pelzer,* 536 U.S. 730, 739 (2002)(quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  Qualified immunity operates to ensure that, before they are subjected to suit, officers are on notice that their conduct is unlawful. *Id.*  "If the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct."  *Harlow, supra*, 457 U.S. at 818-19. A defendant has the burden to establish that he or she is entitled to qualified immunity. *Kopec v. Tate*, 361 F.3d 772, 776 (3d Cir. 2004).

The threshold inquiry a court must undertake in a qualified immunity analysis is whether plaintiff's allegations, if true, establish a constitutional violation." *Hope, supra,* 536 U.S. at 736.  "If the plaintiff fails to make out a constitutional violation, the qualified immunity inquiry is at an end; the officer is entitled to immunity." *Bennett v. Murphy,* 274 F.3d 133, 136 (3d Cir. 2002).  If, however, the plaintiff can establish a constitutional violation, "the next sequential step is to ask whether the right was clearly established." *Saucier v. Katz,* 533 U.S. 194, 201 (2001).  "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202. "This is an objective inquiry, to be decided by the court as a matter of law." *Doe v. Groody*, 361 F.3d 232, 238 (3d Cir. 2004).

a. Due Process Claims.

The Fourteenth Amendment prohibits the States from depriving "any person of life, liberty, or property, without due

process of law."  "The core of due process is the protection against arbitrary governmental action and has procedural and substantive components." *Boyanowski v. Capital Area Intermediate Unit,* 215 F.3d 396, 399 (3d Cir. 2000).

The plaintiff claims that the defendants violated both his procedural and substantive due process rights.

1. Procedural Due Process.

The plaintiff claims that defendants Koser, Shuey and CYS violated his procedural due process rights by failing to notify him of the October 13, 2005 hearing and by failing to obtain an attorney to represent him at the October 13, 2005 hearing.

A procedural due process claim requires a two part analysis.  First, the court must determine whether the interest asserted by the plaintiff is within the scope of protection of life, liberty, or property found in the Due Process Clause. *Shoats v. Horn*, 213 F.3d 140, 143 (3d Cir. 2000).  Second, if the

interest is one that is protected by the Due Process Clause, "the question then becomes what process is due to protect it." *Id.*   In determining whether procedural due process rights have been violated, the court must weigh: 1) the private interest affected by the official action; 2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and 3) the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Mathews v. Eldridge,* 424 U.S. 319, 335 (1976).

"The Supreme Court has recognized a 'fundamental liberty interest of natural parents in the care, custody, and management of their child.'" *Miller v. City of Philadelphia,* 174 F.3d 368, 373 (3d Cir. 1999)(quoting *Santosky v. Kramer*, 455 U.S. 745, 753 (1982)).   Even non-custodial parents have a liberty interest in their relationship with their natural children. *See e.g. Santosky, supra,* 455 U.S. at 753 (stating that the "fundamental liberty interest of natural parents in the care, custody, and

management of their child does not evaporate simply because they have not been model parents or have lost temporary custody of their child to the State"). The interests of parents, however, must be balanced against the state's interest in protecting children suspected of being abused or neglected. *Miller, supra,* 174 F.3d at 373.

"The core of due process is the right to notice and a meaningful opportunity to be heard." *LaChance v. Erickson,* 522 U.S. 262, 266 (1998). Due process requires that the means employed to provide notice be such as one "desirous of actually informing" the person would reasonably adopt to accomplish notice. *Jones v. Flowers,* 547 U.S. 220, 229 (2006)(quoting *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 315 (1950)).

There is no dispute in this case that the defendants did not notify the plaintiff of the situation with Destiny prior to the October 13, 2005 hearing. The defendants contend that they did not notify the plaintiff because they did not know his

whereabouts.  They contend that they unsuccessfully tried to locate him using the phonebook and the internet.

The question in this case is whether the defendants' attempt to locate the plaintiff were steps that one "desirous of actually informing" the plaintiff would take.  At first blush it appears that the defendants' attempts to notify the plaintiff using the phonebook and the internet satisfied this standard.

The plaintiff, however, argues that given that the defendants were told by Carol Scott that the plaintiff was paying support for Destiny the defendants could have located him through the DRO.  More specifically, the plaintiff argues that the defendants could have used the Parent Locator Service established pursuant to Title IV-D of the Social Security Act and 23 Pa.C.S.A. § 4373(a).  The defendants, however, counter that they do not have access to the Parent Locator Service and that DRO does not share information with them.  They point to 23 Pa.C.S.A. § 4376(d) which provides that the central registry of records maintained pursuant to the Title IV-D program "shall be available

only to public welfare offices, district attorneys, probation

departments, domestic relations sections, Federal agencies and

the agencies of other states conducting activities under Title

IV-D of the Social Security Act and courts having jurisdiction in

support of abandonment proceedings or actions and only for the

purposes for which the records have been established."  We

conclude that the plaintiff has not established that the Parent

Locator Service was available to the defendants.

Given the evidence presented by the defendants that the

DRO does not share information with CYS, we conclude that the

defendants' attempts to locate the plaintiff using the phonebook

and the internet do satisfy the standard stated above.

Nevertheless, even assuming *arguendo* that the steps taken

by the defendants to attempt to notify the plaintiff were not

adequate to satisfy the plaintiff's procedural due process

rights, there is not a basis in current law requiring other steps

to attempt to give notice.  Neither party has cited any cases

which would indicate that it was clearly established that the

steps taken by the defendants to attempt to find the plaintiff

were unreasonable under the Due Process Clause in this situation

or a similar situation.   Accordingly, we conclude that it would

not have been clear to a reasonable official in the defendants'

position that the search conducted to locate the plaintiff was

inadequate as a matter of law.[8]   Accordingly, defendants Koser and

Shuey are entitled to qualified immunity on the plaintiff's

procedural due process claims.[9]

---

[8] We note that there is state case law that holds that under
state law there is no duty on the part of CYS to investigate
the whereabouts of a non-custodial parent whose whereabouts are
unknown prior to a dependency hearing. *See In re J.C.,* 603 A.2d
627, 628-629 (Pa.Superior Ct. 1992).   Although state law does
not define the parameters of due process for Fourteenth
Amendment purposes, the state law does reinforce the conclusion
that it would not be clear to a  reasonable official in the
defendants' position that the search conducted to locate the
plaintiff was unlawful.

[9] We note that the plaintiff contends that the defendants
violated his procedural due process rights both by failing to
provide him notice and by failing to appoint him counsel.   The
failure to appoint counsel flows directly from the failure of
the plaintiff to appear at the hearing due to lack of notice.
In any event, the plaintiff has not established that it is the
defendants, as opposed to the court or the juvenile master, who
is responsible for appointing counsel in dependency
proceedings.

Defendant CYS is a municipal entity.  A municipal entity is not entitled to qualified immunity. *Owen v. City of Independence,* 445 U.S. 622 (1980).  However, a municipality cannot be held liable for the unconstitutional acts of its employees on a theory of *respondeat superior*. *Monell v. Department of Social Servs.,* 436 U.S. 658, 691 (1978).  Instead, "[m]unicipal liability only attaches when the 'execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury.'" *Watson v. Abington Twp.*, 478 F.3d 144, 155 (3d Cir. 2007) (quoting *Monell, supra,* 436 U.S. at 694).  "There must be a 'direct causal link between the municipal policy or custom and the alleged constitutional deprivation' to ground municipal liability." *Jiminez v. All American Rathskeller*, *Inc.,* 503 F.3d 247, 249 (3d Cir. 2007)(quoting *City of Canton v. Harris,* 489 U.S. 378, 385 (1989)).

The plaintiff has not established that there was a municipal policy or custom to deny notice to a non-custodial

36

parent or to conduct less than an adequate search for a non-custodial parent in connection with dependency proceedings. Accordingly, defendant CYS is entitled to summary judgment on the plaintiff's procedural due process claims.

2. Substantive Due Process.

The plaintiff claims that all of the defendants violated his substantive due process rights by failing to investigate whether Carol Scott had been awarded sole custody of Destiny after the divorce, by failing to investigate his whereabouts, by failing to appoint a lawyer to represent his interests during the dependency hearing, by failing to provide a court-ordered paternity test and by failing to provide court-ordered individual and family counseling.

The substantive component of the Due Process Clause limits what the government may do regardless of the fairness of the procedures that it employs. *Boyanowski, supra,* 215 F.3d at 399. "'[T]he core of the concept' of due process is 'protection

37

against arbitrary action.'" *Kaucher v. County of Bucks,* 455 F.3d 418, 425 (3d Cir. 2006)(quoting *County of Sacramento v. Lewis,* 523 U.S. 833, 845 (1998)).  "[O]nly the most egregious official conduct can be said to be arbitrary in the constitutional sense." *Id.* Executive action violates substantive due process only when the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience. *Id.*

The plaintiff has not presented evidence sufficient for a fact finder to conclude that any of the defendants' actions shock the conscience.

As discussed above, the failure to notify the defendant of the October 13, 2005 hearing was reasonable given that the defendants did not know the plaintiff's address and that the defendants did attempt to locate the plaintiff using the phonebook and the internet.

Also, as the undisputed facts indicate, a paternity test was given the plaintiff.  The plaintiff has not established that any delay in obtaining the paternity test was the fault of the defendants.  Further any such delay does not shock the conscience.

The plaintiff presents evidence which, he asserts, indicates that the defendants interfered with court-ordered counseling. *Doc. 17 at 75 and Doc. 17-2 at 1, 2, 10, 36-38, 40-41, 47-51, 55-56, 63-64 and 66.*  Although those documents indicate that there were some problems with scheduling the counseling sessions, those documents do not reflect any conduct on the part of the defendants which could be found to shock the conscience.

The defendants are entitled to summary judgment on plaintiff's substantive due process claims.

39

b. Sixth Amendment.

The plaintiff contends that defendants Koser, Shuey, and CYS violated his Sixth Amendment right to counsel.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall . . . have the assistance of counsel for his defence."  By its terms the Sixth Amendment applies only to criminal prosecutions.  A dependency hearing is not a criminal prosecution.  Thus, the Sixth Amendment is not applicable.  Accordingly, the defendants are entitled to summary judgment on the plaintiff's Sixth Amendment claim.

B. State Law Claim.

The plaintiff claims that defendants Koser, Shuey and CYS violated 23 Pa.C.S.A. § 6315(c)(1) by failing to timely notify him of Destiny's placement in protective custody.  These

40

defendants contend that this claim is barred by the immunity

afforded by the Political Subdivision Tort Claims Act, 42

Pa.C.S.A. 8541, et seq.

42 Pa.C.S.A. § 8541 provides that "[e]xcept as otherwise

provided in this subchapter, no local agency shall be liable for

any damages on account of any injury to a person or property

caused by any act of the local agency or an employee thereof or

any other person."  42 Pa.C.S.A. § 8542 enumerates eight

exceptions to a local agency's immunity for specific negligent

acts.[10]

None of the exceptions to a local agency's immunity is

arguably applicable in this case.  Therefore, defendant CYS is

entitled to summary judgment on the plaintiff's state law claim.

---

[10]Liability can be imposed for the following types of
negligent acts: (1) the operation of a motor vehicle in the
possession or control of a local agency; (2) the care, custody
or control of personal property in the possession or control of
a local agency; (3) the care, custody or control of real
property; (4) a dangerous condition created by trees, traffic
controls, or street lights; (5) a dangerous condition of
utility service facilities; (6) a dangerous condition of
streets; (7) a dangerous condition of sidewalks; (8) the care,
custody or control of animals in the possession or control of a
local agency.

A local agency employee is generally immune from liability for acts within the scope of the employee's office or duties to the same extent as his or her employing agency. 42 Pa.C.S.A. § 8545.  However, pursuant to 42 Pa.C.S.A. § 8550, a local agency employee is not immune from liability where his or her conduct amounts to a crime, actual fraud, actual malice or willful misconduct.

The plaintiff has failed to establish that defendant Koser or defendant Shuey's conduct amounts to a crime, actual fraud, actual malice or willful misconduct.  Accordingly, defendants Koser and Shuey are entitled to summary judgment on the plaintiff's state law claim.

V. Recommendations.


     Based on the foregoing, it is recommended that the

defendants' motion (doc. 13) for summary judgment be granted and

that the case file be closed.




                                        /s/ J. Andrew Smyser
                                        J. Andrew Smyser
                                        Magistrate Judge

Dated: December 18, 2008.